PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE JOHNSON, | ) | |
| | ) | CASE NO. 4:22CV1514 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| NATIONAL HEALTH INSURANCE | ) | |
| COMPANY, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 40, 58] |

Pending before the Court are Defendant National Health Insurance Company's ("NHIC") Motion for Summary Judgment (ECF No. 40) and Motion to Strike Plaintiff's Expert Witness Disclosure and Exclude Dr. James Shina as an Expert Witness (ECF No. 58).[1] Both motions are fully briefed. The parties have also filed joint stipulations of uncontested facts as directed by the Case Management Conference Order. ECF No. 44 [redacted]; ECF No. 48 [SEALED]; ECF No. 63. For the reasons below, the Court grants Defendant's motion to strike and excludes Dr. James Shina as an expert witness. Additionally, having reviewed the record, the parties' briefs, and the applicable law, the Court grants NHIC's motion for summary judgment.[2]

---

[1] Originally, Plaintiff named National General Accident and Health as Defendant. By interlineation, the parties agreed to correct Defendant's name to National Health Insurance Company. The Court approved. *See* ECF No. 18.

[2] The Court gave notice of these rulings in its Minutes Order issued December 12, 2023.

(4:22CV1514)

## I. Background

Plaintiff Bruce Johnson filed suit in state court against Defendants NHIC, Meritain Health, and CT Corporation Systems, Statutory Agent for Meritain Health. Defendant Meritain Health[3] removed the action to federal court with consent of all Defendants. ECF No. 1.

### A. The Claim

Plaintiff claims NHIC breached the terms of its insurance contract with Plaintiff by failing to pay for valid claims incurred by Plaintiff and covered by the resulting insurance policy. Plaintiff also claims that NHIC acted in bad faith and in gross violation of its duties under the insurance policy. ECF No. 1-1 at PageID#: 10. In support of his claims, Plaintiff alleges that he purchased a health insurance policy from Defendant with an effective date of December 24, 2019 and was diagnosed with lymphoma on January 28, 2020. ECF No. 1-1 at PageID#: 9. After this diagnosis, Plaintiff underwent a series of medical procedures with various medical providers. ECF No. 1-1 at PageID#: 9. On August 17, 2020, NHIC issued a letter denying payment for Plaintiff's medical procedures, relating to his lymphoma, because "the conditions that were the subject matter of the medical procedures were pre-existing." ECF No. 1-1 at PageID#: 9. Plaintiff claims that his lymphoma was not a pre-existing condition and demands monetary damages for medical bills that NHIC should have paid and are now in collection. ECF No. 1-1 at PageID##: 9–10.

### B. Litigation

The parties appeared before the Court for a Case Management Conference ("CMC"). In advance of that conference, the parties jointly submitted their proposed discovery plan. ECF No.

---

[3] Subsequently, the Court dismissed Meritain Health without prejudice, pursuant to a joint motion by the parties, ECF No. 37, leaving NHIC the sole Defendant.

(4:22CV1514)

12. In that plan, each side anticipated expert discovery. See ECF No. 12 at PageID#: 168. After the CMC, the Court issued a Case Management Order detailing that "[e]xpert discovery shall be completed on or before 7/21/2023" and the date by which dispositive motions were to be filed, among other pretrial requirements. ECF No. 16. NHIC timely filed its motion for summary judgment.[4] Plaintiff timely filed an opposition to Defendant's motion for summary judgment[5] (ECF No. 54), but just before doing so filed a document captioned "Supplement to Rule 26(a)(2) Expert Disclosure" (ECF No. 53).[6] Defendant replied in support of its motion for summary judgment (ECF No. 57) and moved to strike Plaintiff's expert witness disclosure and to exclude the identified expert witness (ECF No. 58).

## II.     Motion to Strike and Exclude

The parties do not dispute that Plaintiff filed the supplement, more than two months after the cut-off date provided in the Court's Case Management Order for completing expert discovery. Plaintiff claims, however, this was truly a supplement and that timely notice had already been given. Defendant disagrees and argues the disclosure is late and moves the Court to strike it and exclude Dr. Shina as an expert witness. As explained below, the Court agrees.

The Case Management Order makes it plain that expert discovery was to end on July 21, 2023. ECF No. 16. Plaintiff's supplement was filed well after that date.

---

[4] To allow NHIC to file certain matters under seal, the Court later enlarged the time for filing dispositive motions. See ECF No. 42. Additionally, months before dispositive motions were due, and after the Court held its third conference with the parties, the Court issued a Civil Trial Order, scheduling a Final Pretrial Conference for December 13, 2023, and Trial for January 16, 2024. ECF No. 30.

[5] The timing of Plaintiff's filing was in accord with extensions granted.

[6] Plaintiff filed the putative supplement at 3:58 p.m. and his opposition to motion for summary judgment ten minutes later, at 4:08 p.m., on the same day.

(4:22CV1514)

Plaintiff argues that he had disclosed Dr. Shina as an expert witness several times prior to filing the supplement. Plaintiff remarks that he orally disclosed during a phone conversation with defense counsel on July 6, 2023, when Plaintiff's counsel referenced a January 12, 2021 letter from Dr. Shina transmitted (pre-litigation) to a grievance panel.[7] The other disclosures were *via* Plaintiff's initial disclosures[8] and later filed jointly stipulated facts.[9] Against this backdrop, Plaintiff's counsel takes issue with NHIC's position that Plaintiff never produced a report and retorts that he at least gave *notice* of an expert. ECF No. 59 at PageID#: 485. In addition to claiming that Dr. Shina's letter of January 2021 functions as an appropriate disclosure, Plaintiff also argues that no written report was required because Dr. Shina was not retained or specially employed to opine. ECF No. 59 at PageID#: 485. Plaintiff misses the point. While he may have done all that he has claimed. None of those efforts supplant an order of the Court or the rules of civil procedure.

Rule 26 requires expert disclosures be made in accord with the timing set by court order. Rule 26(a)(2)(D). Plaintiff did not seek nor did the Court allow an enlargement of the cutoff date set by its Case Management Order. A written expert disclosure report is required "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties

---

[7] *See* ECF No. 59 at PageID#: 488–489 (attaching 2021 letters from Plaintiff's counsel sent pre-litigation to "Appeals Department"). The parties agree that after the July 6, 2023 phone call, Defense counsel was able to locate the January 12, 2021 letter from Dr. Shina. ECF No. 59 at PageID#: 484. *See also,* ECF No. 58-1 at n.2 (stating "[t]hrough its own diligence, NHIC identified what it believed to be the letter referenced by Plaintiff during the July 6 Call."). After finding the letter referenced, NHIC, in a letter dated July 14, 2023 one week before the expert discovery cutoff, gave Plaintiff notice of its intent to move to strike Plaintiff's purported expert disclosure (the January 2021 letter) as insufficient under both Rule 26(a)(2)(B) and (C) requirements. ECF No. 58-2.
[8] *See* ECF No. 11 at Page ID#: 165 (stating generally that "Plaintiff's medical providers will serve as expert witnesses for Plaintiff.").
[9] All stipulations were filed well after the expert discovery cutoff.

(4:22CV1514)

as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Even if Plaintiff were held to the lesser production required by Rule 26(a)(C)[10], as he claims, he failed to have timely met his burden. Sufficiency of the disclosure aside, there is no doubt that Plaintiff's expert was disclosed late. At base, the Supplemental disclosure itself is the best evidence of Plaintiff's tardiness. The unsigned letter from Dr. Shina is dated August 29, 2023, well after the July 21, 2023 due date.

### A. Rule 37(c)

The question that remains is whether Plaintiff's untimely disclosure of Dr. Shina as an expert witness is subject to Rule 37(c) sanctions. The Court's Scheduling Order provides that "[e]xpert discovery shall be completed on or before July 21, 2023." ECF No. 16 at PageID#: 183. In his August 2023 email with Defendant, Plaintiff's counsel "request[ed] an agreement for extending the time to produce report(s) to September 15, 2023." ECF No. 58-3 at PageID#: 481. Defendant declined this request for extension.[11] Rather than move the Court for an extension, Plaintiff, in defiance of the Court's Order, filed his "supplement" late. ECF No. 53 at PageID#: 441.

The Sixth Circuit has found that district courts have broad discretion to exclude untimely disclosures of expert-witness testimony. *Pride v. BIC Corp*, 218 F.3d 566, 578 (6th Cir. 2000). Federal Rule of Civil Procedure 37(c) also provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

---

[10] Rule 26(a)(C) states, in pertinent part, "if the witness is not required to provide a written report, this disclosure must state: (i) subject matter on which the witness is expected to present evidence under [FRE] 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

[11] It is worth noting that Plaintiff did not move the Court to enlarge the expert discovery cutoff.

5

(4:22CV1514)

> information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c). The Sixth Circuit has adopted the following factors to assess whether an untimely disclosure is "substantially justified" or "harmless":

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Howe v. City of Akron, 801 F.3d 718, 748 (6th Cir. 2015). District courts have broad discretion in applying these factors and need not apply each one rigidly. The factors lend themselves to determining whether a party has made an honest, harmless mistake or participated in "underhanded gamesmanship." See Bisig v. Time Warner Cable, Inc., 940 F.3d 205, 219 (6th Cir. 2019).

Plaintiff alleges that counsel's failure does not unfairly surprise Defendants. ECF No. 59. His position is not supported by the record. Plaintiff's January 2021 disclosure was part of a pre-litigation appeal process. In fact, Plaintiff provides no evidence that he submitted the January 2021 letter to Defendant during discovery in the instant litigation. NHIC was left to "its own diligence" to find the letter during this litigation. Plaintiff's counsel's casual mention of the years' old missive a few weeks before the expert disclosure cutoff does not cure the deficiency. Plaintiff's claim that his Initial Disclosures put NHIC on notice does not fare any better. It simply warns that "Plaintiff's medical providers will serve as expert witnesses." ECF No. 11 at PageID#: 165. Dr. Shina was one of nine medical providers listed in the Complaint. ECF No. 1-1. There was no indication which of these providers would provide expert testimony. Plaintiff's failure to timely disclose Dr. Shina, left Defendant unable to depose Dr. Shina prior to their

6

(4:22CV1514)

motion for summary judgment. *See* ECF No. 58-1 at PageID#: 471. This put NHIC at a serious litigative disadvantage. Plaintiff's counsel must have a meaningful justification for such behavior. But none has been offered.

Rather, the record shows that Plaintiff's counsel knew Dr. Shina would provide expert testimony and withheld that disclosure until after Defendant had filed its motion for summary judgment (ECF No. 53). Plaintiff's counsel provides that Dr. Shina "is the single medical professional with the most knowledge of Plaintiff's medical condition, as well as the course of treatment that the Plaintiff underwent."[12] ECF No. 59 at PageID#: 486. Despite purporting to have known about this expert witness since before the case commenced, counsel's attempted disclosure was delayed until after the filing of NHIC's dispositive motion—denying NHIC the opportunity to depose the expert witness, and four months prior to trial. Plaintiff's counsel provides no reason for the delayed disclosure of this expert witness. Therefore, the Court finds Plaintiff's failure to disclose Dr. Shina was not justified and is sanctionable under Rule 37.

### B. The Court's Inherent Authority

"It is completely unacceptable for an attorney to defy an order of a federal court flagrantly and purposefully, even if the decision to do so is premised on a good-faith disagreement over the scope or validity of that order." *Banner v. City of Flint*, 99 Fed.Appx. 29, 40 (6th Cir. 2004) (citing *N. Am. Coal Corp. v. Local Union 2262, United Mine Workers of Am.*, 497 F.2d 459, 465 (6th Cir. 1974)). "Imposition of sanctions comes from the court's power to

---

[12] Plaintiff's statement alludes that Dr. Shina's testimony is very important. This too does not survive scrutiny. Dr. Shina's August 29 letter glosses over Plaintiff's history during the lookback period in two sentences. He even concedes that NCIH's expert correctly notes the common findings in B-cell lymphoma. *See* ECF No. 53-1 at PageID#: 443–44. Even if timely, the supplement would not favorably change the outcome of the case.

(4:22CV1514)

police itself, so that a court can vindicate its authority without resorting to a finding of contempt of court." *Id.* at 37. (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). "Even if there [are] available sanctions under statutes or various rules in the Federal Rules of Civil Procedure . . . the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) (footnote omitted). "A district court may impose sanctions pursuant to its inherent authority 'to control the litigants before it and to guarantee the integrity of the court and its proceedings.'" *Holmes v. U.S. Bank*, No. 1:07-CV-695, 2009 WL 1542786, at *6 (S.D. Ohio May 28, 2009) (quoting *First Bank of Marietta*, 307 F.3d at 512). Courts may use their inherent authority to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or who has engaged in conduct "tantamount to bad faith." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502–03 (N.D. Ohio 2013) (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)).

      Plaintiff had a firm cutoff for disclosing his expert witness and filing any report. He did not seek an enlargement from the Court and waited until September to submit a lackluster production. Plaintiff has breached the rules, the Court's Order, disadvantaged NHIC, and offered no reasonable justification for doing so. Whether under Rule 37, the Court's inherent authority, or both, sanctions are appropriate.

      Accordingly, Plaintiff's Expert Witness Disclosure (ECF No. 53) is stricken, and Dr. James Shina is excluded from being an expert witness in this case.

(4:22CV1514)

### III. Motion for Summary Judgment

**A. Relevant Facts**

NHIC issued a Short-Term Medical Certificate With Preferred Provider Medical Benefits, Policy No. 2008611452, to Plaintiff, effective from December 24, 2019 through December 22, 2020 (the "Certificate"). ECF No. 48 at ¶ 1.

Plaintiff applied for and submitted an electronic application for the Certificate on December 5, 2019. ECF No. 48 at ¶ 2.

Plaintiff became a Covered Person under the Certificate on its effective date of coverage, December 24, 2019. Prior to December 24, 2019, Mr. Johnson was not covered by a health insurance plan issued by NHIC or any of its affiliates or subsidiaries. ECF No. 48 at ¶ 4.

The Certificate provides that "[a] pre-authorization is not the same as verification of benefits and does not guarantee that benefits will be paid. Pre-authorization addresses only the medical necessity and appropriateness of the treatment to be received, including the type of treatment and facility. Payment of benefits is subject to all terms, conditions, limitations, and exclusions in this certificate." ECF No. 48 at ¶ 7.

The Certificate contains a Pre-Existing Conditions Exclusion. ECF No. 48 at ¶ 8.

1. The Certificate defines a Pre-Existing Condition as:

"A Sickness, injury or condition, including any related or resulting conditions:
> a. For which medical advice, consultation, diagnosis, care, or treatment (includes receipt of services, supplies, or diagnostic tests) was received or recommended from a provider or prescription drugs were prescribed during the 1-year period immediately prior to the Covered Person's Effective Date, regardless of whether the condition was diagnosed, misdiagnosed, or not diagnosed; or
> b. That produced signs or symptoms during the 1-year period immediately prior to the Covered Person's Effective Date.
> The signs or symptoms were significant enough to establish manifestation or onset by one of the following:

9

(4:22CV1514)

>> i. The signs or symptoms reasonably should have allowed or would have allowed a medical provider to diagnose the condition; or
>> ii. The signs or symptoms should have caused or would have caused an ordinarily prudent person to seek medical advice, consultation, diagnosis, care, or treatment." ECF No. 48 at ¶ 9.

The one-year period immediately prior to the Certificate's effective date, or the "lookback period," is December 24, 2018, through December 25, 2019. ECF No. 48 at ¶ 10.

**During the Look Back Period**

During this year, the "look back period" Plaintiff's records and the overall evidence indicate that Plaintiff sought and received medical advice, consultation, diagnosis, care, and treatment for medication conditions and associated complications, namely lymphadenopathy and splenomegaly. ECF No. 48 at ¶ 19.

On July 25, 2019, Plaintiff presented to the Trumbull Memorial Hospital Emergency Department for sudden onset right leg and groin pain and right lower extremity swelling. ECF No. 48 at ¶ 20.

An ultrasound of right lower extremity (RLE) revealed a deep vein thrombosis (DVT) from the common femoral vein to the distal superficial femoral vein. ECF No. 48 at ¶ 21.

Plaintiff was discharged from the Trumbull Memorial Hospital Emergency Department on July 25, 2019, with a prescription for an anticoagulant, Xarelto, and instructed to follow up with his primary care physician. ECF No. 48 at ¶ 22.

On August 11, 2019, Plaintiff was admitted to the Trumbull Regional Medical Center Emergency Department with sudden onset left abdominal pain that began as left flank pain three hours before and wrapped around to his abdomen. ECF No. 48 at ¶ 23.

(4:22CV1514)

Results from an August 12, 2019, abdomen and pelvis CT scan found "[m]ultiple scattered mesenteric lymph nodes are identified within the abdomen and pelvis. Mesenteric lymph nodes are not bulky, but several of the mesenteric lymph nodes are somewhat prominent, with individual lymph nodes measuring up to 1.5 cm in diameter. ECF No. 48 at ¶ 24.

The August 12, 2019, abdomen and pelvis CT scan noted that "Findings are nonspecific and may represent lymphoma, metastatic disease, versus reactive benign hypertrophy." ECF No. 48 at ¶ 26.

The abdomen and pelvis CT scan from August 12, 2019, also showed (1) a 2.5 mm distal left ureteral calculus with mild left obstructive uropathy and (2) splenomegaly. ECF No. 48 at ¶ 27.

The emergency room provider also noted "[e]xtensive right groin and pelvic sidewall lymphadenopathy. There are mesenteric enlarged lymph nodes. There is swelling and edema in the proximal right thigh. Correlation is needed the detailed history and exam. Cancer or infection are not excluded. ECF No. 48 at ¶ 28.

On October 9, 2019, Plaintiff saw his primary care physician, Dr. James Shina, for ongoing RLE edema that extended down his thigh down to his foot. Dr. Shina noted that he had previously advised that Plaintiff obtain a vascular consultation, but Plaintiff had not pursued it. ECF No. 48 at ¶ 29.

Plaintiff's December 9, 2019, records from Trumbull Regional Medical Center note "a lymph node within the groin measuring 2.2 x 1.9 x 1.0 cm in size. Clinical palpation recommended." ECF No. 48 at ¶ 30.

(4:22CV1514)

**Lymphoma Diagnosis**

On January 9, 2020, during a three-month follow up appointment with Dr. Shina, Plaintiff reported swelling in his extremities, soft tissue swelling, relative to previous injuries and trauma. ECF No. 48 at ¶ 31.

On examination, Dr. Shina noted a palpable lymph node to the right groin and abdominal pain. ECF No. 48 at ¶ 32.

Results from a January 16, 2020, abdomen and pelvis CT scan found a "massive enlargement of the spleen which measures 17 cm in length, has heterogeneous enhancement compatible with a tumor replacement, suggesting lymphoma or possible leukemia. ECF No. 48 at ¶ 33.

The January 16, 2020, CT scan also found "splenomegaly infiltrated with a mass and adenopathy." ECF No. 48 at ¶ 34.

On January 28, 2020, a CT-guided fine needle aspiration biopsy was performed with a resulting pathology that showed atypical lymphoid infiltrate consistent with large B-cell lymphoma. ECF No. 48 at ¶ 35.

**NHIC's Denial of Benefits**

On August 17, 2020, NHIC informed Plaintiff by letter that it had completed it pre-existing investigation. ECF No. 48 at ¶ 36.

NHIC determined based on the General Definitions section of the Certificate related to pre-existing conditions, and the medical history provided by Trumbull Regional Medical Center, that Plaintiff's following conditions were pre-existing to the effective date of the Certificate: lymphadenopathy, splenomegaly, kidney stone, DVT, hip pain, and migraine. ECF No. 48 at ¶ 37.

(4:22CV1514)

NHIC informed Plaintiff in its August 17, 2020, correspondence that "[a]ny complications resulting from or related to conditions would also be considered pre-existing." ECF No. 48 at ¶ 38.

On January 8, 2021, Plaintiff appealed his denial of Plaintiff's claims. ECF No. 48 at ¶ 39.

On March 22, 2021, NHIC informed Plaintiff's counsel by letter that Plaintiff's case will be referred to the Grievance Panel for review. NHIC included the medical records reviewed in making its pre-existing condition determination. Mr. Johnson's appeal, including his medical records and all addition information provided by Mr. Johnson, was referred to NHIC's Grievance Panel for review. ECF No. 48 at ¶ 40.

Upon receipt of Mr. Johnson's appeal, NHIC's internal clinicians conducted a review of Mr. Johnson's claim and medical records and found that medical records from Trumbull Regional Medical Center and Community Medical Associates, revealed that Mr. Johnson received medical advice and diagnostic tests for splenomegaly and lymphadenopathy during the twelve-months immediately preceding his December 24, 2019, effective date of coverage. ECF No. 48 at ¶ 41.

The Grievance Panel upheld the denial of Mr. Johnson's claims on March 31, 2021, finding that the claims submitted resulting from his B-cell lymphoma were ineligible for benefits pursuant to the pre-existing condition exclusion and were properly excluded. ECF No. 48 at ¶ 42.

NHIC has not paid any benefits to Plaintiff for claims relating to treatment of his B-cell lymphoma from January 16, 2020, through October 19, 2020. ECF No. 48 at ¶ 43.

**B. Standard of Review**

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

13

(4:22CV1514)

v. Publix Supermarkets, Inc., 557 F. App'x 458, 462 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. Scott v. Harris, 550 U.S. 372, 380 (2007). In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. Id. ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial court is not required to search the entire record to establish that a genuine issue of material fact exists." Malee v. Anthony & Frank Ditomaso, Inc., No. 1:16CV490, 2018 WL 1805402, at *2 (N.D. Ohio Apr. 16, 2018) (citing Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008)) (abrogated on other grounds). " '[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c),' the court may determine that fact is undisputed." Malee, No. 1:16CV490, 2018 WL 1805402, at *2 (quoting Fed. R. Civ. P. 56(e)(2)).

To survive summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" Baker v. City of Trenton, 936 F.3d 523, 529 (6th Cir. 2019) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing

14

(4:22CV1514)

party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved" by a factfinder. *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

### C. Discussion

Plaintiff claims Defendant has breached its contract with him by refusing to pay for treatment associated with his B-Cell lymphoma. Defendant moves for summary judgment alleging Plaintiff has failed to provide evidence that "no pre-existing conditions existed," as "Plaintiff has not presented contrary medical records, nor has he submitted an expert report or opinion supporting his position." ECF No. 47 at PageID#: 316, 317 [SEALED].[13]

Plaintiff does not challenge the pre-existing condition exclusion or that "[p]ayment of benefits is subject to all the terms, conditions, limitations, and exclusions in [the] certificate." ECF No. 48 at PageID#: 333. Plaintiff's primary claim is that "the 'signs and symptoms' that he

---

[13] Defendant filed both redacted and unredacted versions of their memorandum in Support of Motion for Summary Judgment (ECF Nos. 43, 47), Stipulation of Uncontested Facts (ECF Nos. 44, 48), Declaration of Valerie Peterson (ECF No. 45, 49), and Declaration of Kevin Trangle (ECF Nos. 46, 50). The Court will refer to the unredacted, sealed versions of these documents.

15

(4:22CV1514)

suffered during the look back period, were not specific enough to conclude that he suffered from Lymphoma or that the signs and symptoms were suggestive of Lymphoma." ECF No. 54 at PageID#: 446. Plaintiff provides no medical records or expert opinions to support this claim.

The parties agree that signs and symptoms of large B-cell Lymphoma include: (1) pain in an enlarged lymph node or organ; (2) B symptoms, including fever, drenching night sweats, and weight loss; (3) generalized pruritus; (4) anorexia; (5) pedal edema, caused by extensive pelvic *lymphadenopathy*; (6) fatigue; and (7) chest discomfort or shortness of breath, caused by mediastinal lymphadenopathy. ECF No. 47 at PageID#: 328; ECF No. 54 at PageID#: 445 (emphasis added). Plaintiff alleges that NHIC's expert, Kevin Trangle, does not connect any of these alleged symptoms to Plaintiff's medical conditions and history. ECF No. 54 at PageID#: 446. The record suggests otherwise. In fact, Plaintiff stipulates, that during the lookback period, he "sought and received medical advice, consultation, diagnosis, care, and treatment for medication conditions and associated complications, namely lymphadenopathy and splenomegaly." ECF No. 48 at PageID#: 335 at ¶ 19. NHIC determined that Lymphadenopathy was one of Plaintiff's pre-existing conditions. ECF No. 49 at PageID#: 342.

The relevant question is whether his signs or symptoms would have allowed a medical provider to diagnose the condition. The clear answer to this question is yes. In his conclusion, NHIC's expert Dr. Trangle provides, in pertinent part:

> Even though [Plaintiff] believed his symptoms were related to kidney stones, the progressive abdominopelvic and inguinal *lymphadenopathy* was responsible for some of his pain in addition to localized tenderness and leg welling, the latter issue which was related to a combination of impaired lymphatic and venous drainage with development of a DVT. Furthermore, he developed progressive *splenomegaly* from NHL during the one-year lookback period which was also likely responsible for discomfort.

(4:22CV1514)

> The *progressive nature of the above symptoms and clinical signs/findings reasonably should have allowed the medical providers to diagnos[e] the NHL* within the year preceding the policy effective date.

ECF No. 50-1 at PageID#: 365(emphasis added).

Plaintiff, however, provides no evidence that his signs or symptoms excluded lymphoma as a possible diagnosis. ECF No. 54 at PageID#: 446. It is not enough to assert that the symptoms were indicative of multiple conditions, particularly when Plaintiff's August CT scan indicated that lymphoma was a possibility. ECF No. 48 at PageID#: 336 at ¶ 26. At that time, the radiologist recommended clinical correlation. ECF No. 50-1 at PageID#: 358. Plaintiff attended a follow-up with Dr. Shina in September of 2019, but that visit yielded no documentation of discussion of the August CT scan results that indicated possible lymphoma. ECF No. 50-1 at PageID#: 358. Later, on January 22, 2020, however, when Plaintiff saw Dr. Shina again, the doctor referred Plaintiff for a biopsy based on the same symptoms that prompted Plaintiff to seek care during the lookback period.[14] ECF No. 50-1 at PageID#: 359. Based on this record, there is no genuine dispute regarding whether Plaintiff possessed a pre-existing condition.

When there is no genuine dispute of fact, the movant must be able to establish that they are entitled to judgment as a matter of law. Plaintiff's sole claim is a breach of contract claim. The Certificate at issue expressly provides: "THIS CERTIFICATE CONTAINS A PRE-EXISTING CONDITIONS EXCLUSION: We will not pay benefits for charges resulting directly or indirectly from a Pre-Existing Condition or a complication resulting therefrom." ECF

---

[14] Among other concerns, Plaintiff reported swelling in his extremities and soft tissue swelling; "Dr. Shina noted a palpable lymph node to the right groin and abdominal pain he felt was likely from constipation and fatigue." ECF No. 50-1 at PageID#: 358.

(4:22CV1514)

No. 1-1 at PageID#: 29.  Plaintiff provides no facts that establish he did not have a pre-existing condition.  Therefore, Defendant did not breach its contract with Plaintiff.

## II.  Conclusion

Defendant's Motion to strike Plaintiff's Expert Witness Disclosure and Exclude Dr. James Shina as an Expert Witness (ECF No. 58) is granted.

Viewing all evidence and reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact, and NHIC is entitled to judgment as a matter of law.  For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 40)  is granted.

IT IS SO ORDERED.

| December 29, 2023 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |